## STATE OF MARYLAND *v.* MAURICE T. SIEGEL

[No. 111, September Term, 1971.]

*Decided November 29, 1971.*

---

446

The cause was argued before MORTON, ORTH, THOMPSON, POWERS and GILBERT, JJ.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Howard L. Cardin, State's Attorney for Baltimore City, Joseph Kiel* and *Charles O. Fisher, Jr., Assistant State's Attorneys for Baltimore City,* on the brief, for appellant.

*Norman P. Ramsey* and *H. Thomas Howell* for appellee.

ORTH, J., delivered the opinion of the Court.

We find:

   (1)  Ch. 119, 18 U.S.C. §§ 2510-2520, entitled Wire Interceptions and Interception of Oral

Communications (the federal act), is constitutional;[1]

(2) a judge of the Supreme Bench of Baltimore City, presiding in the Criminal Court of Baltimore, and a judge of a Circuit Court of a county of this State may enter orders authorizing interceptions of wire or oral communications;

(3) the entering of such orders, all matters with regard to the execution of them, and the use and disposition of property seized under them shall be in conformity with the provisions of the federal act;

(4) such orders may be entered only when the interception of wire or oral communications may provide evidence of the commission of the offense of murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana or other dangerous drugs or any conspiracy to commit any of such offenses;

(5) no interception of a wire or oral communication shall be made without an order authorizing it being first obtained.

The occasion for these findings is the appeal by the State from the grant on 30 November 1970 by Harris, J. presiding in the Criminal Court of Baltimore of a motion by Maurice T. Siegel to dismiss the indictment returned against him. The indictment was filed on 14 December 1969 and presented that from 1 January 1965 to 12 November 1969 Siegel, an attorney at law, and Robert London, a bail bondsman, unlawfully conspired to violate the lottery laws. The indictment was the result of information gleaned from the interception of telephonic

---

1. Pub. L. 90-351, Title III, § 802, Omnibus Crime Control and Safe Streets Act, 19 June 1968, 82 Stat. 212. But, as discussed *infra*, we are not concerned with § 2511 (3), which provides that the Act shall not limit certain constitutional powers of the President.

communications of London. London's telephonic communications were intercepted under the authority of three orders entered by Harris, J. on 6 October, 13 October and 5 November 1969. Judge Harris noted in granting the motion to dismiss that the orders had been entered under the provisions of Code, Art. 27, § 125A,[2] Code, Art. 35, § 94,[3] and "Title III of the Omnibus Crime and Control and Safe Streets Act of 1968, 18 U.S.C. Section 2516." The reasons he gave for dismissing the indictment as to Siegel were those "stated in paragraph No. 7 of Siegel's Motion to Dismiss." Paragraph 7 alleged that the contents of the telephonic and oral communications had been unlawfully intercepted and disclosed. As reasons why the interceptions and disclosures were unlawful, it included the reasons set forth in a "Motion to Suppress Intercepted Communications and All Evidence, Information, Leads and Fruits Derived Therefrom, and for Other Relief" filed by Siegel by incorporating them by reference. Among those were that the federal act and the State acts were unconstitutional and that the orders were not entered in conformance with the statutes in any event. We shall discuss our findings and then apply them to the case before us.[4]

### THE CONSTITUTIONALITY OF THE FEDERAL ACT

Four cases decided by the Supreme Court, one at the end of 1966 and the others in 1967, cleared the way for

---

2. Sections 125A-125D of Art. 27 are under the subtitle "Electronic Devices."

3. Sections 92-99 of Art. 35 are under the subtitle "Wire Tapping." Penalties for violations of provisions of the subtitle are set out both in § 99 of Art. 35 and § 585 of Art. 27.

4. Siegel does not assert that the State has no right to appeal. We point out that Code, Art. 5, § 14 provides that the State may appeal to this Court "from a final order or judgment granting a motion to dismiss, or quashing or dismissing any indictment * * * in a criminal action, * * *." We held in State v. Simms, 13 Md. App. 203, in which we reversed an order dismissing an indictment for failure to hold a preliminary hearing, and in State v. Hunter, 10 Md. App. 300, in which we reversed an order dismissing an indictment for lack of prosecution, that the statute meant precisely what it said. We adhere to that view.

the enactment of legislation giving sanction to the interception of wire and oral communications [5]—*Berger v. New York*, 388 U. S. 41, *Warden v. Hayden*, 387 U. S. 294, *Katz v. United States*, 389 U. S. 347, and *Osborn v. United States*, 385 U. S. 323.

In *Berger* the Court considered the constitutionality of a New York statute providing for the interception of conversations by wiretapping and eavesdropping methods. N.Y. Code Crim. Pro. § 813-a (1967). It found expressly that conversation was within the ambit of Fourth Amendment protection and held that the use of electronic devices to capture it was a "search" within the meaning of that Amendment. 388 U. S. at 51. It found in short that the New York law was constitutionally defective because it made a "blanket grant of permission to eavesdrop * * * without adequate judicial supervision or protective procedures." 388 U. S. at 60. Specifically it was offensive in four areas. (1) Eavesdropping was authorized (a) without requiring belief that any particular offense had been or was being committed, and (b) without the need that the conversations sought be particularly described.[6] "As with general warrants this leaves too much to the discretion of the officer exercising the order." At 59. (2) Eavesdropping was authorized for a two months period with extensions of that period. This was the equivalent of a series of intrusions, searches and

---

**5.** " 'Wire communication' means any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of interstate or foreign communications." 18 U.S.C. § 2510 (1).

" 'Oral communication' means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C. § 2510 (2).

**6.** The statute required the naming of "the person or persons whose communications, conversations or discussions are to be overheard or recorded * * *." The Court said: "But this does no more than identify the person whose constitutionally protected area is to be invaded rather than 'particularly describing' the communications, conversations, or discussions to be seized." 388 U. S. at 59.

seizures to a single showing of probable cause and prompt execution was avoided. An extension was authorized on a mere showing that it was "in the public interest", and this is insufficient without a showing of "present probable cause" for the extension. (3) There was no termination date on the eavesdrop, once the conversation sought was seized, the suspension of the surveillance being left entirely in the discretion of the officer. (4) There was no requirement for notice as in conventional warrants and this defect was not overcome by requiring a showing of exigent circumstances. Nor did the statute provide for a return on the warrant, thereby leaving full discretion in the officer as to the use of seized conversations of innocent as well as guilty parties.

*Hayden* created a suitable environment for statutory surveillance of communications by obliterating the distinction between "mere evidence" and evidence amounting to fruits and instrumentalities of the crime, or contraband. Prior to *Hayden* "mere evidence" was not subject to seizure. *Gouled v. United States*, 255 U. S. 298 (1921). *Hayden* made all incriminating evidence subject to seizure so long as it had a connection with the suspected criminal behavior.

*Katz* has been cited by legal commentators as authority for four propositions.[7] (1) Conversations as well as physical evidence were subject to seizure pursuant to the Fourth Amendment. This was a logical extension of *Hayden* which discredited "[t]he premise that property interests control the right of the Government to search and seize * * *." 389 U. S. at 353. (2) The Fourth Amendment protects a person from unreasonable seizure of his conversations from a place where he has a reasonable expectation of privacy—"* * * what he seeks to preserve as private, even in an area accessible to the

---

7. See "Electronic Surveillance by Leave of the Magistrate: The Case for the Prosecution" by John H. Burpo, 38 Tenn. L. Rev., pp. 14-32 (1970), in answer to "Electronic Surveillance by Leave of the Magistrate—The Case in Opposition" by Ralph Spritzer, 118 Pa. L. Rev. 169 (1969).

public, may be constitutionally protected." Id., at 351-352. (3) Expectation of privacy does not depend on whether or not the intrusion constitutes a physical trespass. "For the Fourth Amendment protects people, not places." Id., at 351. (4) Surveillance of communications to accommodate "the legitimate needs of law enforcement" may be authorized by judicial order issued in accordance with appropriate Fourth Amendment safeguards. Id., at 356.[8] The safeguards that were lacking in the surveillance in *Katz* were that the Government agents were not required (a) before commencing the search, to present their estimate of probable cause for detached scrutiny by a neutral magistrate; (b) during the conduct of the search to observe precise limits established in advance by a specific court order; (c) after the search, to notify the authorizing magistrate in detail of all that had been seized.[9]

*Berger* and *Katz* each relied in large extent on *Osborn,* 388 U. S. at 56-58; 389 U. S. at 355. *Osborn* held that under sufficiently "precise and discriminating circumstances", a federal court may empower government agents to employ a concealed electronic device "for the narrow and particularized purpose of ascertaining the

---

8. Although in *Katz* the surveillance was held to be unlawful, it was so held because no judicial order, a warrant, had been obtained. "[i]t is clear that this surveillance was so narrowly circumscribed that a duly authorized magistrate, properly notified of the need for such investigation, specifically informed of the basis on which it was to proceed, and clearly apprised of the precise intrusion it would entail, could constitutionally have authorized, with appropriate safeguards, the very limited search and seizure that the Government asserts in fact took place." Id., at 354.

9. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." The Court found it difficult to imagine how any of the exceptions could ever apply to a search and seizure by interception of communications. "Even electronic surveillance substantially contemporaneous with an individual's arrest could hardly be deemed an 'incident' to that arrest. Nor could the use of electronic surveillance without prior authorization be justified on grounds of 'hot pursuit'. And, of course, the very nature of electronic surveillance precludes its use pursuant to the suspect's consent." The Court refused to create a new exception. Id., at 357-358.

truth of the * * * allegations" of a "detailed factual affidavit alleging the commission of a specific criminal offense." 385 U. S. at 329-330. Discussing that holding in *Berger*, 388 U. S. at 57, the Court said that "the order authorizing the use of the electronic device" in *Osborn* "afforded similar protections to those * * * of conventional warrants authorizing the seizure of tangible evidence." Through those protections, "no greater invasion of privacy was permitted than was necessary under the circumstances." See 389 U. S. at 355.

In the light of *Berger, Hayden, Katz* and *Osborn* a judicially approved interception of communications could be constitutionally permissible if conducted under rigid Fourth Amendment controls. It appears that the federal act is a congressional response, the final version of which was drafted to meet the standards of *Berger* and *Katz*. S. Rep. No. 1097, 90th Cong., 2d Sess. 66 (1968). And see record of floor debate, 114 Cong. Rec. 90th Cong. 2d Sess., pp. 6186-6292. We think it meets those standards.

We observe preliminarily that in *Alderman v. United States*, 394 U. S. 165, the constitutionality of the federal act was upheld tacitly if not specifically. Delivering the opinion of the court, Mr. Justice White stated with respect to the sanctity of Fourth Amendment rights:

> "In this respect we are mindful that there is now a comprehensive statute [10] making unauthorized electronic surveillance a serious crime. The general rule under the statute is that official eavesdropping and wiretapping are permitted only with probable cause and a warrant. Without experience showing the contrary, we should not assume that this new statute will be cavalierly disregarded or will not be enforced against transgressors." 394 U. S. at 175.

In considering the constitutionality of the federal act we first note that only Fourth Amendment guarantees

---

10. A footnote designated the statute as the one here being considered.

are involved. Significantly the Supreme Court did not place any reliance either in *Berger* or *Katz* on rights flowing from any of the other amendments. We do not feel that fear of surveillance of communications when that surveillance is circumscribed under Fourth Amendment standards amounts to a denial of free speech under the First Amendment. Nor do we think that it violates Fifth Amendment provisions because it seizes incriminating testimonial statements. In the absence of compulsion by the authorities such seizure does not bring the right against self-incrimination into play. See *Hoffa v. United States*, 385 U. S. 293; *Todisco v. United States*, 298 F. 2d 208 (9th cir. 1961), *cert.* denied, 368 U. S. 989 (1962).[11] And it seems that only in certain circumstances, as when a person has been taken into custody or otherwise deprived of his freedom by the authorities, would the Sixth Amendment right to assistance of counsel in any event preclude an electronic surveillance. Usually there would be no custodial interrogation to invoke dictates of *Miranda v. Arizona*, 384 U. S. 436. And with respect to privileged communications between attorney and client, § 2517 (4) of the act provides: "No otherwise privileged wire or oral communication intercepted in accordance with or in violation of, the provisions of this chapter shall lose its privileged character." We conclude that only under the Fourth Amendment is the validity of interception of communications to be tested.

We have found that in the light of *Berger, Hayden, Katz* and *Osborn* a judicially approved interception of communications is constitutionally permissible if conducted under the rigid Fourth Amendment controls. Our inquiry turns to the question whether such interceptions authorized by the federal act are under the requisite Fourth Amendment controls.

Certainly the federal act requires all the safeguards

---

11. In *Hoffa* the Court indicated that a defendant must show that the "incriminating statements were the product of [some] * * * sort of coercion, legal or factual", to violate the Fifth Amendment. 385 U. S. at 304.

which were lacking in *Katz*. Those safeguards concerned the intervention of the judicial process. In the *Katz* surveillance the government agents were not required to present their estimates of probable cause for detached scrutiny by a neutral magistrate before commencing surveillance; under the act surveillance may only be by judicial order issued upon application which includes a full and complete statement by the applicant of the facts and circumstances relied on by him to justify his belief that an order should be issued. § 2519 (1) (b). In *Katz* the agents were not required during the surveillance to observe precise limits established in advance by a specific court order; the act requires that the order specify such precise limits. § 2518 (4) and (5). The agents in *Katz* were not compelled, after the search, to notify the authorizing judge in detail of all that had been seized; under the act immediately upon the expiration of the period of the order the recordings of the communications shall be made available to the issuing judge and sealed under his directions. § 2518 (8) (a). The act is in full conformance with *Katz*.

We next consider the federal act in relation to the four areas in which *Berger* found the New York Act offensive. The New York Act authorized surveillance without requiring belief that any particular offense had been or was being committed and without the need that the conversations sought be particularly described. The federal act requires "a full and complete statement of the facts and circumstances relied on by the applicant [for the order authorizing surveillance], to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted." § 2518 (1) (b). Patently the

particularity requirement as to the offense being committed, read into the probable cause provision of the Fourth Amendment, is met by the act, as is the particularity requirement expressly set out as to the place to be searched. The requirement of particularity as to the things to be seized begs for discussion.[12]

The question is what the Court meant when it indicated that the communications, conversations, or discussions to be seized had to be "particularly described." See note 6 *supra*. Certainly, as Mr. Burpo pointed out in his article in the Tennessee Law Review, note 7 *supra*, "There is an obvious difficulty in specifying the seizure of nonexistent conversations that is to take place at some future, undetermined point of time." 38 Tenn. L. Rev. at 28. But the act prescribes that the applicant for the surveillance order must show probable cause that an individual is committing, has committed, or is about to commit a particular offense and that particular communications concerning that offense will be obtained through the interception. § 2518 (3) (a) and (b). We think that the showing of the probability of these facts meets the particularity requirement of the constitution in the circumstances created by the uniqueness of communications surveillance. We believe *Berger* requires no more than that. We think that to say that specificity is impossible because the property to be seized, that is, the conversation, is nonexistent would be a total subversion of the Fourth Amendment. See *Beal v. Skaff*, 418 F. 2d 430 (7th Cir. 1969) in which a search warrant designated certain incriminating, physical evidence and the place where it would probably be in the future, although it had not yet arrived there at the time the warrant was sought. The court held the warrant authorizing the search of the place designated was valid.

The second and third areas in which *Berger* found the

---

12. "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Amendment IV to the Constitution of the United States.

New York Act offensive was the two month period authorized for the surveillance and the failure to prescribe a termination date once the property had been seized. It felt that this was the equivalent of a series of intrusions, searches and seizures to a single showing of probable cause, avoided prompt execution, and left the suspension of the surveillance in the discretion of the government agent. The federal act meets these objections. By § 2518 (5) no order may authorize interception "for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days." And as to execution the order may require reports to be made to the issuing judge showing what progress had been made toward achievement of the authorized objective and the need for continued interception. § 2518 (6). *Berger* also found wanting the provision in the New York statute permitting an extension of the surveillance if "in the public interest." The federal act permits extensions of the original order only upon application made in accordance with the requirements for the original application, § 2518 (5), plus the added requirement that there must be a statement setting forth the results thus far obtained or a reasonable explanation of the failure to obtain such results. § 2518 (1) (f). And for an extension there must be a reestablishment of probable cause. The period of the extension shall be no longer than the authorizing judge deems necessary to achieve the purposes for which it was granted and in no event for longer than thirty days. And see § 2518 (1) (d). We see no Fourth Amendment violations in the light of these provisions.

*Berger* noted, as the fourth area, that there was no requirement for notice in the New York statute as in conventional warrants, although it recognized that this was necessary because the success of the interception depended on secrecy. However, it complained that this defect was not overcome by a showing of special facts, but on the contrary permitted uncontested entry without any showing of exigent circumstances. The federal act over-

comes the lack of notice by requiring a showing of exigent circumstances. Section 2518 (1) (c) provides that the application contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Berger* also pointed out that the New York Act did not provide for a return on the warrant "thereby leaving full discretion in the officer as to the use of seized conversations of innocent as well as guilty parties." 388 U. S. at 60. As we observed in discussing the federal act in relation to *Katz*, the federal act requires a return of the recording of the communications to the judge issuing the order and they are to be sealed under his directions. § 2518 (8) (a). It further requires the issuing judge to report to the Administrative Office of the United States Courts within thirty days after the expiration of an order or each extension, designated prosecuting authorities to report to such Office each January and such Office to report to Congress each April. § 2519. And see § 2518 (9).

We believe that the federal act cures all the defects enumerated in *Berger*.

There are two other areas covered by the federal act with respect to which we deem comment advisable. One is under § 2511 (3) which exempts from the statutory controls certain matters within the constitutional power of the President. We have no need and do not express an opinion as to the constitutionality of these provisions. The other is under § 2518 (7) which, as distinguished from § 2511 (3), does not exempt surveillance of communications from the statutory controls, but authorizes such surveillance without antecedent justification. But the authorization is carefully circumscribed. Such surveillance is permissible only when the government agent who may apply for an order reasonably determines that "an emergency situation exists with respect to conspiratorial activities threatening the national security

interest or to conspiratorial activities characteristic of organized crime that requires a wire or oral communication to be intercepted before an order authorizing such interception can with due diligence be obtained" and there are grounds upon which an order could be entered. There must then be an order approving the interception made in accordance with the statute within 48 hours after interception has occurred or begins to occur. In the absence of an order, such interception shall immediately terminate when the communication sought is obtained or when the application for the order is denied, whichever is earlier. If the application for approval is denied or interception is terminated without an order being issued the contents of the communication intercepted shall be treated as having been obtained in violation of the statute. And when an application for order of approval is denied the issuing judge shall cause an inventory to be filed on the persons named in the application and "such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice." § 2518 (8) (d). In the light of these limitations we do not think the search authorized without antecedent justification is unreasonable.

It is our view that the authorization to the states to search and seize wire and oral communications provided and restricted by the federal act is constitutional.[13] See *United States v. Cantor,* 328 F. Supp. 561 (E. D. Pa., 1971) ; *United States v. Sklaroff,* 323 F. Supp. 296 (S. D. Florida, 1971) ; *United States v. Escandar,* 319 F. Supp. 295 (S. D. Florida, 1970).[14]

---

13. We are not here concerned with the question of standing to object. We observe, however, that any aggrieved person may move to suppress the contents of any intercepted wire or oral communication or evidence derived therefrom on the grounds that (i) it was unlawfully intercepted; (ii) the order of authorization was insufficient on its face; or (iii) the interception was not made in conformity with the order. § 2518 (10) (a). An "aggrieved person" means "a person who was a party to any intercepted wire or oral communication or a person against whom the interception was directed." § 2510 (11). See *Alderman v. United States,* 394 U. S. 165. Compare *Manger v. State,* 214 Md. 71.

14. See also "Notes: Wiretapping and Electronic Surveillance

## THE MARYLAND STATUTES

There is no question but that the federal act is controlling in state proceedings. Section 2515 provides:

> "Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceedings in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter."

However, the federal act is not self-executing as far as the states are concerned. While the principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, may apply to a State court judge of competent jurisdiction for an order authorizing an interception, he may do so only if so "authorized by a statute of that State." The State court judge may grant such an order only in conformity with the federal act and "with the applicable State statute." Such order may issue only with respect to designated crimes—"murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana or other dangerous drugs, or other crime dangerous to life, limb or property, and punishable by imprisonment for more than one year, *designated in any applicable State statute authorizing such interception,* or any conspiracy to commit any of the foregoing offenses." § 2516 (2) (emphasis supplied). Likewise a state may initiate an interception without antecedent authority in

—Title III of the Crime Control Act of 1968", 23 Rutgers Law Review, 319-388 (1969); "Wiretapping and Electronic Eavesdropping: The Law and Its Implications", (Monograph Series— volume 2) New York University School of Law (1969); "A Proposed Electronic Surveillance Act", Blakey and Hancock, 43 Notre Dame Lawyer 657 (June 1968).

an emergency situation under § 2518 (7) only if "acting pursuant to a statute of that State."

We conclude from the provisions referring to a state statute that all that is required for a state validly to permit interception of wire and oral communications is to have in effect a statute authorizing its principal prosecuting attorney or the principal prosecuting attorney of any of its subdivisions to apply to one of its judges of competent jurisdiction for an order of interception. Without this authorization any interception of communications by the State would be in violation of the federal act. With this authorization the federal act takes over and controls the state action except as to certain matters now discussed. We construe the language of § 2516 (2), providing that the state judge "may grant in conformity with section 2518 of this chapter [titled "Procedure for interception of wire or oral communications"] and with the applicable State statute" to mean that the State *may* require procedures that are more restrictive than those spelled out in § 2518 of the federal act but in the absence of such statutory provisions the procedures are pursuant to § 2518. Also the State may authorize by appropriate legislation interception with respect to crimes other than "murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana or other dangerous drugs" and conspiracy to commit any of them, but these other crimes are limited to crimes dangerous to life, limb, or property, and punishable by imprisonment for more than one year specifically designated in an applicable State statute. If the State so designates any such other crimes, then the order may issue with respect to conspiracy to commit them also. But if there is no applicable State statute designating other crimes, the State order may issue only for the crimes spelled out in § 2516 (2). Further, if the State desires to authorize interception without antecedent authority it must grant such authority by statute. Again, if it does so it may make the requirements more restrictive but not more liberal. If it grants the authority with-

out spelling out the requirements, § 2518 (7) controls. If there is no provision in a State statute for interception without antecedent authority such interception by the State is not permissible.

Maryland has now in effect two statutes dealing with the interception of communications. Code, Art. 35, § 92-99 (ch. 116, Acts 1956) concern wiretapping—interception of wire communications, telephonic and telegraphic. Code, Art. 27, §§ 125 A-C (ch. 706, Acts 1959) and § 125 D (ch. 201, Acts 1965) concern electronic devices—interception of oral communications. Each authorizes a judge of a circuit court and a judge of the Supreme Bench of Baltimore City to enter an order authorizing interception. Art. 35, § 94 (a) ; Art. 27, § 125 A (b). With respect to the wiretapping statute the application for the order may be made by the Attorney General or any State's Attorney. With respect to the electronic devices statute the application may be made only by a State's Attorney. These two statutes provide the authorization required by the federal act to make application for an interception order. A judge of a circuit court and a judge of the Supreme Bench of Baltimore City are each a judge of "competent jurisdiction" for each is a judge of a court of "general criminal jurisdiction." 18 U.S.C. § 2510 (9) (b).[15] Thus there is compliance with the dictate of § 2516 (2) of the federal act, enabling the valid interception of communications in Maryland. As we have found that a judicially approved interception of communications is constitutionally permissible if conducted under Fourth Amendment controls, it is patent that the mere authority to apply for judicial approval is constitutional. Since there are statutes in this jurisdiction as required by the application provisions of § 2516 (2) of the federal act, the constitutionality *vel non* of those provisions of this State's statutes concerning the requirements with

---

15. The six courts in the Eighth Judicial Circuit, that is Baltimore City, are styled the "Supreme Bench of Baltimore City." One of the courts is the Criminal Court of Baltimore. Constitution of Maryland, Art. IV, §§ 19 and 27.

respect to the application and the grant of the order is not material. In other words those provisions of the State statutes in that regard which are repugnant to the federal act as not as restrictive as the provisions of the federal act are pre-empted by the federal act which prevails over the repugnant provisions.

Although there is in this State the requisite statutory authority for the application and entering of an order authorizing the interception of wire or oral communications with respect to the offenses specifically set out in § 2516 (2) of the federal act, there is no statutory designation in Maryland of any "other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year." Nor is there statutory provision in this State for subsequent approval of an interception of a wire or oral communication made without antecedent authority. Under § 2518 (7) of the federal act application may be made for such approval only when such interception was made pursuant to a statute of the State.

Thus it is that we find that the various State's attorneys in this State, and the Attorney General to the limited extent above set out, have authority to apply to a judge of the circuit court of a county or a judge of the Supreme Bench of Baltimore City, presiding in the Criminal Court of Baltimore, for an order and extensions thereof authorizing the interception of wire or oral communications. An order authorizing such interception may be entered only with respect to the offenses of murder, kidnapping, gambling, robbery, bribery, extortion, dealing in narcotic drugs, marihuana or other dangerous drugs, and any conspiracy to commit any of those offenses. The application, the order, extensions thereof and all procedures with regard thereto and with regard to the interception of communications and procedures thereafter, including disclosure and admissibility of the contents and evidence derived therefrom in evidence, must be in accordance with the federal act. Interception of communications without antecedent approval is not

permissible under the present status of laws of this State. The penalty provisions for violations prescribed by Code, Art. 27, § 125 B and § 585 and Art. 35, § 99 are, of course, in full force and effect.

## THE INSTANT CASE

Having found that wire or oral communications may be validly intercepted in Maryland, we now look to see if the interceptions here were in fact valid.

It is a command of the Constitution of the United States according to *Berger v. New York, supra,* and *Katz v. United States, supra,* that the duration of an interception not be longer than is necessary under the facts of the particular case. Thus the federal act requires that each application for an order contain "a statement of the period of time for which the interception is required to be maintained" for it should automatically terminate when the described type of communication has been first obtained. § 2518 (1) (d). However, the act recognizes that "where a course of conduct embracing multiple parties and extending over a period of time is involved, the order may properly authorize proportionately longer surveillance, but in no event for longer than 30 days, unless extensions are granted." [16] So § 2518 (1) (d) continues: "If the nature of the investigation is such that the authorization for interception should not automatically terminate when the described type of communication has been first obtained, a particular description of facts establishing probable cause to believe that additional communications of the same type will occur thereafter" must be included in the application. But the act makes clear that even though the facts contained in the application justify surveillance over a period of time, the order, in addition to specifying the period of time during which the interception is authorized must include "a statement as to whether or not the interception shall automatically

16. From the report of the Senate Judiciary Committee in 2 United States Congressional and Administrative News (1968) at 2190.

terminate when the described communication has been first obtained." § 2518 (4) (e). And § 2518 (5) after stating that "No order entered under this section may authorize or approve the interception of any wire or oral communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than 30 days," provides:

> "Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objective, or in any event in thirty days."

The order of 6 October 1969 authorized the interception and recording of telephonic wire communications relative to the offense of conspiracy to violate the lottery laws over specifically designated telephone lines "to begin at 11:00 A.M. Monday, October 6, 1969, and end at 6:00 P.M. Friday, October 10, 1969." The order of 13 October 1969 authorized the interception and recording of telephonic wire communications relative to the offenses over the designated telephone lines "to begin at the time of the signing of this Order [13 October 1969, 11:50 P.M.] and to end at 8:00 A.M., Tuesday, October 21, 1969." It also authorized the interception and recording of oral communications of London and Siegel, and "any member of the lottery organizations relative to the aforementioned crimes which conversations may be carried on in the basement premises of 1202 North Charles Street in Baltimore City" during the same period. The order of 5 November 1969 gave like authority for the period beginning at 12:30 A.M., 5 November 1969, when the order was signed, and ending 6:00 P.M., Wednesday, 12 November 1969.

None of the orders included a statement "as to whether or not the interception shall automatically terminate when the described communication has been obtained." None contained a provision that the authorization to intercept "must terminate upon attainment of the authorized objective." The act clearly directs that the order specify that interception must terminate when the objective for which the order was issued is achieved even though the period of authorized interception has not been exhausted. Otherwise the termination, even though within the authorized period, is left entirely in the discretion of the agent conducting the surveillance regardless of the seizure of the communication sought, and this was one of the deficiencies which *Berger* found offensive.[17] 338 U. S. at 59-60. We are not persuaded by the State's argument that since the orders "authorized continuing surveillance over a restricted period of time" there was substantial compliance with the dictates of the act. The categorical imperatives—every order "shall specify" and "shall contain"—are unqualified and the provisions of the act, both standing alone and when considered in the light of its legislative history, see 2 United States Congressional and Administrative News (1968) 2191-2192, concede no exceptions. We think that the provisions of § 2518 (4) (e) and (5) are mandatory. See *Johnson v. State*, 177 S.E.2d 699 (Ga. 1970) ; *Cross v. State*, 171 S.E.2d 507 (Ga. 1969).

We think it also mandatory that an interception order "contain a provision that the authorization to inter-

---

17. According to the returns made to the court, interception under the order of 6 October began at 3:15 P.M. that day and "continued uninterruptedly until 5:55 P.M. October 10th on all four of the telephone lines designated, resulting in the interception of 491 communications.

Under the order of 13 October interception commenced at 11:50 P.M. on that day and continued uninterruptedly until 7:04 P.M. October 20th on three of the lines, resulting in the interception of 544 communications.

Under the order of 5 November interception commenced on two of the lines at 10:15 A.M. on that day and continued uninterruptedly until 5:40 P.M. on November 12th, resulting in the interception of 413 communications.

cept shall be executed as soon as practicable," and a provision that the interception "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interceptions" under the act. The order of 6 October contained neither of these provisions. In the orders of 13 October and 5 November the court said it was "satisfied that the provisions of this Order herein set forth provide that the authorization to intercept, granted under the terms of this Order, will be conducted as soon as practicable and in such a way as to minimize the interception of communications not otherwise subject to interceptions." Even if this statement by the issuing judge is deemed compliance with the statutory mandate, the absence of the required provisions in the order of 6 October tainted the orders of 13 October and 5 November because they each fed on the first order. That is the application for the order of 13 October included as facts and circumstances to show present probable cause extracts of the contents of the communications intercepted under the authority of the order of 6 October and the application for the order of 5 November included as facts and circumstances to show present probable cause extracts of the contents of the communications intercepted under the authority of two preceding orders. And the initial order, application and affidavit were physically incorporated in the renewal orders' applications and affidavits, to establish the justification for the succeeding orders. The invalidity of the order of 6 October would render invalid the two renewal orders. We hold that the order of 6 October 1969 was invalid as not in compliance with § 2518 (4) (e) and (5) and that the invalidity of the order of 6 October in the circumstances rendered invalid the orders of 13 October and 5 November. Since the orders provided no valid authority to intercept the communications, the contents of the intercepted communications were obtained in violation of the federal act. Since the contents were obtained in violation of the federal act no part of them and no evidence derived from them could be received in evidence in any

proceeding before any grand jury. § 2515. It appears from the record before us that the contents of the intercepted communications were disclosed to the Grand Jury which returned indictment 8048 against Siegel and London.[18] We hold that the lower court did not err in granting the motion to dismiss indictment 8048 as to Siegel.

### THE DISPOSITION OF THE CONTENTS OF INTER- CEPTED COMMUNICATIONS

Judge Harris in the order dismissing the indictment as to Siegel also dealt with the disposition of the tapes, logs and transcriptions of the intercepted communications. He first observed that he would not "review, stay, or interfere with" orders of Grady, J. entered on 18 August 1970 and 13 October 1970 in a proceeding as to London to the effect that such property "shall be delivered forthwith to counsel for London." But as the judge issuing the interception orders he ordered that "upon the return of all such items and property to counsel for London in conformity with Judge Grady's order, such items and property shall not be destroyed, but shall be preserved intact and under seal, in a fireproof safe in the office of either one of the attorneys of record for London, and shall not be opened, handled, or displayed in any manner to any person, without a showing of good cause and an order of the issuing judge authorizing such opening or the use in any manner of said property."

Maryland Rule 729 g 1 provides *inter alia* that if the motion to suppress evidence on the ground that it was

---

18. The Grand Jury also returned indictments 8049 and 8050 charging violation of the lottery laws against London alone and "companion" indictments including 8289 against Harvey Joseph Robinson and Lillian Melvin and 8189 against Julius Salsbury. At a hearing as to London on a Motion to Suppress the Evidence, see *infra*, an Assistant State's Attorney told the court that he was the assistant who examined the witnesses before the Grand Jury and was prepared to testify that the only evidence laid before the Jurors was "a relation of the actual interception conversations which took place at the basement premises 1202 N. Charles Street." It appears that an affidavit by him to that effect was received in evidence.

obtained by an unlawful search or seizure is granted prior to trial "the property [19] shall be delivered to the person entitled thereto and shall not be offered in evidence by the State at the trial on the merits in the criminal proceeding." There is no provision for the disposition of the property if the motion is granted during the trial. See Rule 729 d 1 and d 2. Neither the Maryland wiretapping statute nor the electronic devices statute makes provision for disposition of property seized by interception of communications.[20]

Section 2518 (8) (a) of the federal act provides in relevant part:

> "Immediately upon the expiration of the period of the order, or extensions thereof, such recordings [of the contents of any wire or oral communication intercepted] shall be made available to the judge issuing such order and sealed under his directions. Custody of the recordings shall be wherever the judge orders. They shall not be destroyed except upon an order of the issuing or denying judge and in any event shall be kept for ten years."

We feel that this is repugnant to the Maryland Rule and

---

19. Rule 729 h provides: "As used herewith, a 'search or seizure' shall include but not be limited to wire tapping or the use of any electronic device or other device or equipment referred to in Code, Article 35, Section 92-99, inclusive, and Article 27, Sections 125-A-C, and 'property' shall include but not be limited to the records, tapes or transcripts of conversation which are obtained thereby."

20. The wiretapping statute provides: "Only evidence obtained in conformity with the provisions of this subtitle shall be admissible in evidence and then only in a prosecution for the crime or crimes specified in the court order, in the circuit courts of this State or in the criminal courts of Baltimore City." Code, Art. 35, § 97. The electronic device statute is silent as to admissibility of evidence obtained, although the application for the order thereunder must state that the "evidence thus obtained will be used solely in connection with an investigation or prosecution of said crimes" suspected to have been, or about to be committed. Code, Art. 27, § 125 A (b). Rule 729 g 1 precludes the admission of such evidence illegally obtained only when offered by the State. Art. 35, § 97 would seem to preclude its admission even when offered by the defendant. As to admissibility under the federal act see § 2515 and § 2518 (9).

pre-empts it insofar as recordings of the contents of wire or oral communications intercepted are concerned. We think that the provisions of the federal act govern the disposition of such recordings, including logs, transcripts and other items pertaining to the contents of the communications. We hold that Judge Harris' order with respect to the disposition of the property was proper.

## THE MOTION TO DISMISS THE APPEAL

Siegel includes in his brief a motion to dismiss the appeal.[21] The sole reason presented in support of the motion is that his case was moot when it reached us.[22] The contention is predicated upon rulings made by Grady, J. in proceedings involving London on the basis that those rulings were binding not only as to London but also as to Siegel. We do not see it that way.

Prior to dismissal of the indictment as to Siegel the State entered a *nolle prosequi* of it as to London. Rule 711. The State had pressed for trial against London and his case was assigned to Judge Grady for trial.[23] Among numerous pleadings filed by London was a motion to suppress the evidence. Rule 729. The evidence sought to be suppressed included the contents of the communications intercepted under the three orders issued by Judge Harris and the evidence seized under the search war-

---

21. Maryland Rule 1036 d provides that a motion to dismiss an appeal may be included in the appellee's brief which in such event shall also include the argument in support of the motion. It further provides that the appellant may include argument in opposition to the motion in a reply brief. No reply brief was filed by the State in this case.

22. Maryland Rule 1035 (b) 7 provides that an appeal may be dismissed upon motion filed by any party for the reasons that "The case had become moot."

23. It seems that Siegel was incapacitated. When he was called for arraignment on 28 November 1969 the court noted for the record that he "was in the hospital in the intensive care unit, unable to appear here today." On 22 July 1970 Siegel moved to postpone the taking of a deposition of a witness by the State because he would be unable to participate "without seriously endangering his life and health, having shortly after his indictment suffered two heart attacks necessitating his extended hospitalization and convalescence * * *." A letter dated 17 July 1970 to such effect from his attending physician was attached.

rant directed to London's premises. The motion, as supplemented and amended, was heard and determined as a preliminary matter. Rule 729 d 1. Judge Grady found that the wiretap provisions of the federal act were binding on the States. He held that the orders had been improperly issued. He found that there had not been compliance with specific dictates of the federal act and that probable cause within the contemplation of both the federal and State acts had not been shown. He further ruled that the search and seizure warrant under the authority of which London's office was searched was invalid as not based on probable cause. In the light of his findings he granted a motion to suppress the evidence.[24] He expressly refused to dismiss the indictment.[25] We agree that these rulings were final and conclusive as to London. Rule 729 g 1, subtitle "Binding Effect of Pretrial Ruling", provides that when a motion for the suppression of property is granted prior to trial, the property "shall not be offered in evidence by the State at the trial on the merits in the criminal proceeding." [26] Under Rule 729 g 2 it is only a pretrial rule denying a motion for the suppression, exclusion or return of property on the ground that it was obtained by an unlawful search and seizure that is in any event reviewable on appeal or on a motion for a new trial. See also Rule 729 f.[27] We said in *State v. Mather*, 7 Md. App. 549, 554: "Under the pres-

---

24. Judge Grady expressly stated that because of his ruling it was unnecessary to consider whether or not the Maryland wiretapping statute was constitutional.

25. "The court is not moving, sua sponte, to dismiss the indictment. If the State wishes to make that motion, that motion will be denied. And if the defense wishes to make that motion it will be denied." London's motion to dismiss the indictment was withdrawn without prejudice.

26. Compare with Rule 729 g 2 which provides that when such motion is denied prior to trial the ruling is binding at the trial unless the trial judge, in the exercise of his discretion, grants a hearing *de novo* on the defendant's renewal of his motion. No such exercise of discretion is authorized when the motion was granted.

27. In *Pearce v. State*, 8 Md. App. 477, 478, citing *Harris v. State*, 6 Md. App. 7, we made clear that a denial of a pretrial motion to suppress evidence filed under Rule 729 was an interlocutory ruling from which an immediate appeal would not lie.

ent law of Maryland, therefore, the State has no right to appeal, either by statute, by rule, or under the common law, from the granting of a motion to suppress evidence.[28] However, we do not agree that Judge Grady's rulings finally and conclusively determined the matters affected thereby as to Siegel.

It seems that in the cases before the Court of Appeals in which the appeal was dismissed the questions became moot because the position of the parties had factually changed. For example, in *Potts v. Governor,* 255 Md. 445 where the question concerned the validity of the appointment of members of various Boards of Election Supervisors, the case became moot because their terms expired. In *Arundel Corporation v. Board of Zoning Appeals,* 255 Md. 78, the hearing sought to be enjoined had been actually held before the appeal was determined. In *State v. Sheridan,* 248 Md. 320, the State sought to have Sheridan compelled to give further testimony to a Grand Jury and the term of that Jury had ended and it had been discharged when the case reached the Court of Appeals. In *Selen Housing Corp. v. Goldberg,* 225 Md. 309 where there was an appeal from an order ratifying a

28. However, there is authority in federal decisions that even though standing alone a pretrial order suppressing evidence was not appealable, a pretrial dismissal of an indictment, after the granting of a pretrial motion to suppress the evidence was appealable and where the basis of the dismissal of the indictment was inextricably intertwined with the basis of the suppression order, both orders must be reviewed together. *United States v. Dote,* 371 F. 2d 176 (7th cir. 1966); *United States v. Tane,* 329 F. 2d 848 (2nd cir. 1964). It may well be that had the indictment been dismissed as to London and the dismissal appealed by the State, we would have reviewed, under the rationale of the federal decisions, the suppression order and the dismissal order together. See Rule 1087.

It is noted that 18 U.S.C. § 3731 provided that the United States could appeal from a decision dismissing any indictment or information. That provision was comparable in effect to the provision of Code, Art. 5, § 14 quoted *supra.* We observe that § 3731 was amended by Pub. L. 90-351, 19 June 1968 by providing expressly for an appeal by the United States from decisions sustaining motions to suppress evidence. See also 18 U.S.C. § 2518 (10) (b) which as of 19 June 1968 provided for an appeal by the United States from the granting of a motion to suppress the contents of any intercepted wire or oral communication or evidence derived therefrom.

trustee's foreclosure sale, the property had passed into the hands of a *bona fide* purchaser. In *Lloyd v. Supervisors of Elections,* 206 Md. 36 the question whether a candidate for judge of an orphans' court could cross-file in the primary became moot when the primary was held and the candidate unsuccessful. In *Banner v. Home Sales Company D,* 201 Md. 425, zoning contested before the Court of Appeals had been superseded by the zoning authorities. In *Montgomery Co. v. Metropolitan Dis.,* 200 Md. 525, the bill of complaint on which the claim to an injunction was based had been dismissed below. In *Eberts v. Congressional Country Club,* 197 Md. 461, the question was the validity of the action by the Club's Board of Governors in suspending Eberts from membership. By the time the case reached the Court of Appeals the suspension had been lifted. In *State v. Haas,* 188 Md. 63, two defendants requested they be furnished certain statements they made to the police. An order was passed directing the statements be furnished and the State appealed. When the appeal was reached the statements had been furnished so "any question involved in this case is moot." At 66.[29]

The instant case is not within a frame of reference comparable to cases considered by the Court of Appeals to be moot. There was no change in the factual posture of Siegel's case. The rulings of Judge Grady were matters of law reaching London but not Siegel. "No trial judge is required to abdicate his own individual judgment merely because a colleague of coordinate jurisdiction has enunciated a principle of law which he feels is

29. The dismissal by courts of moot cases had been grounded at times on constitutional limitations of power. At other times they accept as a rule of decision governing the exercise of jurisdiction that a case which is moot will not be decided. In *Lloyd* at 43 the Court found it unnecessary to decide whether its practice in dismissing appeals which were moot as to the parties, was because of a constitutional lack of power or whether it was the application of a rule of decision. It seems that the point is still left open. *Board of Education v. Montgomery County,* 237 Md. 191, 195; *Board of Public Welfare v. Myers,* 224 Md. 246, 251.

erroneous." *Washburne v. Hoffman,* 242 Md. 519, 525. The motion to dismiss the appeal is denied.

> *Motion to dismiss appeal denied; order dismissing indictment affirmed; costs to be paid by Mayor and City Council of Baltimore City.*