## STATE OF MARYLAND v. THOMAS MONROE McGHEE

[No. 1698, September Term, 1981.]

*Decided July 14, 1982.*

The cause was argued before GILBERT, C. J., and MORTON, J., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), specially assigned.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Warren B. Duckett, Jr., State's Attorney for Anne Arundel County, Gerald K. Anders, Assistant State's Attorney for Anne Arundel County, Gerald D. Glass, State Prosecutor,*

and *Charles Burton Frey, Assistant State Prosecutor,* on the brief, for appellant.

*Gary W. Christopher, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

## — THE ISSUE —

The important question put to us by the State in the instant case is whether the State Prosecutor possesses the power to obtain a wiretap order so as to intercept telephone messages between persons suspected of bribery. If the answer to the interrogatory is in the affirmative, we will be required to reverse the judgment of the Circuit Court for Anne Arundel County and remand the case for trial.

Should the State Prosecutor be excluded from the narrowly restricted class of persons permitted to apply for and obtain wiretap orders, Thomas M. McGhee, the appellee, his culpability, if any, notwithstanding, will walk away untried, much less unconvicted. This is so because the illegally-gathered evidence must be suppressed.

## — THE FACTUAL PREDICATE —

The attempted bribery of Annapolis Police Officers, Sgt. Russell Hall and Det. William Powell, led Chief John C. Schmitt to seek the assistance of the Maryland State Police. The involvement of the State Police, and particularly Sgt. Peter F. Edge, led to the party Edge considered to be the most likely to furnish legal guidance and ultimate prosecution, the State Prosecutor.

Using a "body wire," the police recorded incriminating statements made by Richard E. Lomax. Unfortunately, efforts to learn from Lomax the identity of the "Boss man" fell short of the mark. Apparently because the "body wire"

failed to produce the desired result, the State Prosecutor made an application for an order sanctioning a wiretap on certain listed telephones. The application was supported by the affidavit of Sgt. Edge.

The substantive sufficiency of the affidavit or application is not under attack, and no useful purpose will be served by detailing the allegations contained in the application or the affidavit. It is enough to know that the warrant and documents in support thereof were legally sufficient if the State Prosecutor is a proper person to obtain a wiretap order.

As a result of the information obtained through the "body wire" and the ultimate telephone "taps," the appellee and 10 other defendants were charged in a 17-count indictment including nine counts of bribery, one count of conspiracy to violate the bribery laws, one count of obstruction of justice, two counts of conspiracy to obstruct justice, one count of misconduct in office, one count of possession of lottery paraphernalia, one count of keeping a place for operation of a lottery, and one count of conspiracy to violate lottery laws.

The appellee moved, pursuant to Md. Rule 736, to suppress the evidence obtained "as a result of an illegal search and seizure and the use of a wiretap and electronic eavesdropping."

Following a hearing, the judge granted the motion to suppress the wiretap evidence and also granted appellee's motion to dismiss. This appeal ensued.

## — THE LAW —

Before the creation of the office of the State Prosecutor there was no single prosecutorial official cloaked with the authority to initiate and conduct multi-county investigations into criminal activity.

State's Attorneys, historically, have been limited in their powers to the prosecution of crimes perpetrated within the territorial confines of the particular county, or the City of Baltimore, that the State's Attorney is elected to serve.

The Attorney General of the State, even though a State-wide official, is subject to severe constitutional restrictions as far as criminal investigations are concerned. The State Constitution, Article V, § 3, limits the Attorney General's venture into criminal investigations to two instances: 1) when he has been directed by an act of the General Assembly or a joint resolution of that body to conduct such an investigation; 2) when ordered by the Governor to conduct the investigation.

Recognizing that some prosecutorial arm with State-wide power was needed, the Executive and Legislative Branches of Government submitted to the voters of Maryland a Constitutional Amendment "clarifying the authority and duties of the Attorney General." Laws 1976, Ch. 545. The voters adopted the amendment at the General Election of November 2, 1976.[1]

Laws 1976, Ch. 612, enacted in anticipation of the favorable voter reaction to the clarification of the authority of the Attorney General,[2] now codified as Md. Ann. Code art. 10, § 33A-33F, set out with particularity the qualifications, duties, appointment, and removability of the State Prosecutor.

Md. Ann. Code art. 10, § 33B (a) conferred upon the State Prosecutor, *inter alia,* the following "duties, powers, and responsibilities ... [:]

> (b) ... Except with respect to offenses alleged to be committed by himself or members of his staff, he may, on his own initiative, or at the request of the Governor, the Attorney General, the General Assembly, The State Ethics Commission, or a State's attorney, investigate:

> (1) Criminal offenses under the State election laws;

---

1. The Constitutional Amendment, submitted to the voters as "Question No. 9," was ratified by a vote of 604,723 to 171,265.

2. Laws 1976, Ch. 612, would have been null and void if the voters had rejected the Amendment to the Constitution.

(2) Criminal offenses under the State Public Ethics Law;

(3) Violations of the State bribery laws in which an official or employee of the State or of a political subdivision of the State or of any bicounty or multicounty agency of the State was the offeror or offeree, or intended offeror or offeree, of a bribe;

(4) Offenses constituting criminal malfeasance, misfeasance, or nonfeasance in office committed by an officer or employee of the State or of a political subdivision of the State or of any bicounty or multicounty agency of the State. Any person who is advised by the State Prosecutor that he is under investigation may, at his discretion, release this information including any results pertaining to him to the public; and

(5) Violations of the State extortion, perjury, and obstruction of justice laws related to any activity described in subsection (b)(1) through (4).

(c) ... At the request of either the Governor, Attorney General, General Assembly or a State's attorney, the State Prosecutor may investigate criminal activity conducted or committed partly in this State and partly in another jurisdiction, or which is conducted or committed in more than one political subdivision of the State."

Pursuant to the provisions of Md. Ann. Code art. 10, § 33B (c), Governor Harry Hughes, on July 13, 1981, directed the State Prosecutor to investigate "allegations of bribery related to the payment of monies to members of the Annapolis City Police Department, which payments were allegedly made for the purpose of protecting participants in a multi-jurisdictional illegal lottery operation being conducted between Baltimore City, Maryland and Annapolis City, Anne Arundel County, Maryland." Patently, the alleged offenses, because of their multi-political sub-divisional nature, fell within the ambit of the State Prosecutor.

Ten days after the Governor had directed that the State Prosecutor investigate the matter, the State Prosecutor presented to a judge of the Circuit Court for Anne Arundel County, an application for a wiretap order. The application recited in part that the State Prosecutor had "authority to make this Application for an Ex Parte Order authorizing a Wiretap pursuant to Article 10, Section 33B (g) of the Annotated Code of Maryland. . . ." Whether the State Prosecutor actually had that authority is the precise issue before us.

We observe that before the General Assembly enacted the present wiretap and electronic surveillance law, Md. Cts. & Jud. Proc. Code Ann. §§ 10-401 — 10-413, wiretaps in Maryland were governed by three distinct statutes, one federal [3] and two State.[4] *State v. Siegel,* 13 Md. App. 444, 285 A.2d 671, *aff'd,* 266 Md. 256, 292 A.2d 86 (1972).[5] The current Maryland Wiretap Law tracks the federal act.[6] We look then to the Omnibus Crime Control and Safe Streets Act of 1968 for guidance in interpreting Maryland law, when the Court of Appeals or this Court has not heretofore addressed the subject.

The United States Code, *Congressional and Administrative News,* 90th Congress, Second Session (1968), Vol. 2, Legislative History, p. 2187, in speaking of the proposed 18 U.S.C. § 2516 (2), states:

> "No application [for wiretap or electronic surveillance orders] may be authorized unless a specific State statute permits it. The State statute must meet the minimum standards reflected as a whole in the proposed chapter. The proposed provision envisions that States would be free to adopt

---

3. 18 U.S.C. §§ 2510-2520.

4. Former Md. Ann. Code art. 35, §§ 92-99 and Md. Ann. Code art. 27, §§ 125 A-C.

5. Gilbert, *A Diagnosis, Dissection, and Prognosis of Maryland's New Wiretap and Electronic Surveillance Law,* 8 U. of Balto. L. Rev. (1979) 183-221.

6. *Ibid.*

more restrictive [7] legislation, or no legislation at all, but not less restrictive legislation. State legislation enacted in conformity with this chapter should specifically designate the principal prosecuting attorneys empowered to authorize interceptions."

18 U.S.C. § 2516 provides in pertinent part:

"The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire or oral communications . . . ."

The Maryland statute concerned with the identity of the person authorized to make application for a wiretap order is Courts Art. § 10-406. That section provides:

"*The Attorney General or any State's attorney* may apply to a judge of competent jurisdiction, and the judge, in accordance with the provisions of § 10-408 of this article, may grant an order authorizing the interception of wire or oral communications by investigative or law enforcement officers when the interception may provide or has provided evidence of the commission of the offense of murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in controlled dangerous substances, or any conspiracy to commit any of the foregoing offenses. No application or order shall be required if the interception is lawful under the provisions of § 10-402 (c) of this subtitle." (emphasis supplied.)

---

**7.** The Maryland Wire and Electronic Surveillance Law is in a number of respects more stringent than its federal counterpart. For example, 18 U.S.C. 2511 (2)·(c) permits an interception when one of the parties to the communication has given prior consent. Maryland law, on the other hand, requires prior consent of all parties to the communication. Courts Art. § 10-402 (c) (3). *See generally,* Gilbert, *supra,* note 5.

The argument in support of the hearing judge's action in dismissing the indictment is that the State Prosecutor is neither the Attorney General nor a State's Attorney. Hence, using that reasoning, the State Prosecutor was without authority to seek a wiretap order, any order granted to him is a nullity, and the evidence gleaned by and through such an order is inadmissible.

While it may be argued that the State Prosecutor is the "principal prosecuting attorney" for the purpose of investigating "[v]iolations of the State bribery laws," Md. Ann. Code art. 10, § 33B (b) (3), the State Prosecutor is neither the Attorney General nor a State's Attorney. The State legislation, Courts Art. § 10-406, enacted in conformity with 18 U.S.C. §§ 2510-2520, does not "specifically designate" the State Prosecutor as an attorney "empowered to authorize interceptions." [8]

We think, therefore, that Judge Wolff was correct in dismissing the indictment against the appellee.

> *Order dismissing indictment affirmed.*
> *Costs to be paid by Anne Arundel County.*

---

[8] We are aware of the fact that the 1982 Session of the General Assembly, apparently in direct response to the circuit court ruling in the instant case, amended section 10-406 by inserting the words "State Prosecutor" therein between "Attorney General," and "or any State's Attorney."