# HARRY N. RICKARDS

## *vs.*

## STATE.

*Witnesses: cross-examination; needless repetition of questions.*
*Criminal Law. Abortion. Examination of Witnesses.*
*Experts. Hypothetical questions.*

Although a question allowed to be asked a witness may have been objectionable, it can not present a case of reversible error if it appears that no injury was caused thereby to the exceptant.

p. 187

Where a witness, on cross-examination, had already and repeatedly answered a question, it is not error for the court to refuse to allow him to be asked the same question a sixth time.

p. 187

Where a witness had repeatedly and fully answered a question, it is well within the trial court's discretion to have cautioned the examining attorney not to repeat his questions so often.          p. 187

Upon a trial for manslaughter alleged to have been committed through a criminal operation performed for the purpose of producing an abortion, a witness had testified that he had only seen the accused use one instrument; to allow the witness to answer why he did not see any other, by explaining that he was not watching the accused, but was otherwise engaged, was: *Held,* under the facts of the case, not to have been error.

p. 186

In a criminal prosecution for manslaughter through having attempted to produce an abortion, to refuse to allow a witness to be asked to describe what other instrument he saw used, when he has repeatedly testified he saw no other instrument used, is not error.          p. 188

In Maryland, instead of being examined as to their opinion based upon a hypothetical question, experts may be examined as to their opinion based upon the evidence in the case which the proposed witness has heard.                    p. 190

For the trial court itself to question and examine the accused while he is on the witness stand is a proper exercise of judicial discretion, provided he manifests no opinion adverse to the traverser or to his defense.                    p. 190

*Decided June 23rd, 1916.*

Appeal from the Criminal Court of Baltimore City. (DUFFY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Albert S. J. Owens* (with whom was *Harry B. Wolf* on the brief), for the appellant.

*Albert C. Ritchie, the Attorney-General,* (with whom were *Wm. F. Broening, State's Attorney for Baltimore City,* and *Roland R. Marchant, Deputy State's Attorney,* on the brief), for the appellee.

URNER, J., delivered the opinion of the Court.

The questions to be decided in this case are raised by twenty-eight exceptions reserved in the course of the appellant's trial, resulting in conviction, upon an indictment for manslaughter alleged to have been committed through an operation performed for the purpose of producing an abortion.

The first exception was taken to the action of the trial Court in overruling an objection to a question addressed by the State to its principal witness, James R. Meredith, who

had been indicted jointly with the appellant, but had obtained a severance, and was testifying voluntarily for the prosecution. Meredith had stated in his testimony that he was responsible for the pregnancy of the young woman, Miss Smith, upon whom the operation is said to have been performed, that he employed the appellant to produce the abortion, and went with Miss Smith to the appellant's apartments for that purpose, that she reclined upon a bed and the appellant inserted a speculum, which made her very nervous, and that to compose her the witness sat down by her, on the side of the bed opposite to the appellant, and stroked her hand. After further testifying that he did not see any instrument except the speculum used, he was asked: "Why didn't you see it?" The answer in effect was that he withdrew his attention from the appellant and was looking in the girl's face as he sat by her side. Objection was made to the question because it assumed that the speculum was not the only instrument employed. An abortion, according to the proof, could not be produced by a speculum, which is useful only for examination purposes. The appellant's defense was that he in fact used no instrument or other means to cause an abortion and was not employed for such an operation, but was simply engaged to clean out the womb upon the representation by Meredith that a miscarriage had already occurred leaving certain irregular conditions which required attention. Upon examination, however, as the appellant asserts, he discovered that a miscarriage had not taken place, but was then impending, and he therefore proceeded no further, advising Meredith and the young woman that the only thing to do was to let nature take its course. There is no reason whatever to believe that the defense thus indicated was prejudiced by the assumption contained in the interrogatory above quoted. The witness distinctly and repeatedly testified that he did not see any instrument used except the speculum. It was the object of the inquiry to show that as the witness was not watching the appellant's movements, but had his atten-

tion otherwise occupied, an instrument capable of causing an abortion could have been used without coming under his observation. The question was objectionable in assuming that there was such an instrument employed, but the answer elicited, in the light of the other testimony just referred to, involved no injury to the defense, and hence we see no reversible error in this ruling.

The second exception relates to the refusal of the Court to permit Meredith to be asked for the sixth time on cross-examination, when it was he had communicated to the State's Attorney, through his counsel or others, his willingness to testify for the State in this case. As the witness had five times stated that he had always expressed such a willingness, beginning with the time of his hearing before the police justice, and later on in a conference with representatives of the State's Attorney, the further repetition of the question was properly held to be unnecessary.

In the effort to develope the theory that Meredith had procured, and Miss Smith had used, some means of abortion before she was brought to the appellant, questions were asked Meredith on cross-examination as to whether he had not previously consulted a certain other physician about the trouble. Having admitted that he had talked with the other doctor several times on the subject he was questioned as to how long before he brought Miss Smith to the appellant's apartments he had been having conferences with the other physician, and in reply he twice fixed the time at one or two weeks. Counsel for appellant again inquired whether it was not at least a week, and the witness not responding further, and the question being pressed, the Court said, "Oh, do not repeat your questions so often. Your questions are getting captious." This comment was made the occasion for the third exception. In thus forbidding and characterizing the unnecessary repetition of a question which had been fully answered, the trial Court was exercising a discretion with which we find no sufficient reason to interfere.

The fourth and fifth exceptions show further unsuccessful efforts to renew the question just considered. There is no ground for reversal in those rulings.

The sixth bill of exception reveals no error. Having repeated on cross-examination that he did not see the appellant use any instrument except the speculum, Meredith was asked by counsel for appellant to describe the other instrument if any such was used. The witness could not have described an instrument he did not see, and the disallowance of the question could work no possible injury.

The seventh, eighth, ninth and eleventh exceptions relate to questions asked Meredith on cross-examination in regard to statements he had made at the time of the Coroner's inquest. In each instance the question undertook to quote from the previous statement, and to challenge the witness to admit, language which was wholly consistent with his testimony in the pending trial. Because there was no contradiction whatever between the two statements, the Court held the inquiry to be immaterial. There is no apparent error in the rulings on these exceptions.

The same witness, having testified that the operation performed by the appellant on Miss Smith occupied from five to eight minutes, was asked whether he had not stated at the inquest that it consumed not over four or five minutes. This was a pertinent and proper inquiry and should have been permitted. The Court disallowed the question, and on account of this action the tenth exception was reserved. It does not appear from the record, however, that this error was of sufficient consequence to justify a reversal solely upon that ground.

No reversible error occurred in the rulings on the twelfth and thirteenth exceptions. They were taken to the refusal of the Court to permit inquiries which were wholly irrelevant to the issue as to the appellant's guilt or innocence.

In the ruling on the fourteenth exception there was error. An expert witness for the State, who assisted at the post mortem examination of the body of Miss Smith, had testified in

chief that an instrument known as a uterine sound could have been inserted into the womb through the speculum, and on cross-examination the witness was asked whether there were any indications that a uterine sound had been used and had produced the uraemic poisoning which he said was the cause of death.   This was a natural and proper question under the circumstances, and we think it should not have been excluded.

The fifteenth and sixteenth exceptions were taken to the admission of testimony as to certain interviews of the appellant bearing upon the question of his employment by Meredith.   These objections were properly overruled.

The seventeenth, eighteenth, nineteenth, twentieth, twenty-first and twenty-second exceptions refer to the exclusion of testimony, as to the cause of Miss Smith's death, proffered by the appellant to be given by physicians who had heard all the evidence for the State and were asked to take it all into consideration as the basis for the opinion they might express. It was the evident purpose of the appellant to show that the septic condition which was the immediate cause of death could not have resulted from anything which the appellant may have done only two days previously.   Some of the interrogatories on this subject were open to the objection that they asked for an opinion as to whether anything the appellant *did* to Miss Smith when she and Meredith called at his apartments could have caused her death two days later, the question as to what was actually done by the appellant on that occasion being the issue to be determined by the jury.   But the general object of the inquiries covered by these exceptions was to prove that the infection from which this unfortunate young woman lost her life resulted from a cause or condition which must have existed before the time when the appellant is alleged to have performed the operation for an abortion.   The further theory of the offer obviously was that such testimony, if admitted, would tend to corroborate the appellant's assertion that his first examination of Miss Smith disclosed a miscarriage then impending, from which the in-

ference might be drawn that something had already been done to produce that result, and that there was then no reason to operate for such a purpose even if this had been the original intention.

In the recent case of *Damm* v. *State,* 128 Md. 665, the rule as to the admissibility of expert testimony based upon the evidence in the case, which the proffered witness has heard, was thoroughly discussed and clearly stated in an opinion delivered by CHIEF JUDGE BOYD. The decision in that case is conclusive of the question raised by the exceptions last mentioned, and fully sustains the right of the appellant to adduce the evidence therein proposed. It was held that while the authorities elsewhere differ as to the wisdom of permitting experts to express their opinion based on the evidence in a case, instead of requiring a hypothetical question to be submitted, the rule is settled in this State that such testimony is admissible. The opinion evidence sought to be introduced by the appellant was material and important to his defense, and there was reversible error in its rejection.

An unusual contention is made upon the basis of the twenty-third and twenty-fourth exceptions. While the appellant was on the witness stand the Court asked him a number of questions. It is not suggested that they were objectionable in themselves, but it is complained that so active a participation by the Court in the examination of the appellant as a witness was prejudicial to his case. The record does not give us any reason to believe that in asking the questions referred to the Court exceeded the limits of a proper judicial discretion. Its inquiries were entirely pertinent, and it had a perfect right to interrogate the witness on its own motion. In exercising this right it does not appear to have manifested an opinion adverse to the appellant or to the defense upon which he sought to rely. These exceptions, therefore, are not sustainable.

By the twenty-fifth and twenty-sixth bills of exceptions it is shown that the counsel for the defendant having stated in

open Court that he expected during the course of the trial to put upon the stand Dr. William S. Gardner, but having failed to do so, leave was granted the State to call this witness while it was presenting its case in rebuttal. Doctor Gardner testified to a conversation he had with the appellant in which the latter said that on the occasion of Miss Smith's visit to his apartments he used a speculum and measured the depth of the womb with a uterine sound. The witness further stated that the insertion of such an instrument into a pregnant uterus would probably produce a miscarriage although it might possibly not have that effect. We find no occasion to disturb the rulings on these exceptions. The declarations of the appellant as to the instruments he used were competent to be proven as part of the State's case, and the order in which the proof should be offered was a matter within the sound discretion of the trial Court, which is affirmatively shown to have been fairly exercised in view of the situation which had developed. .

The twenty-seventh and twenty-eighth exceptions were taken to the omission of the Court to characterize as improper certain remarks of the Deputy State's Attorney in his argument to the jury. One of the statements to which appellant's counsel objected at the time was that the State had made no bargain with Meredith, and the other was that the speaker did not intend to barter away the verdict. It had been testified by Meredith that he had voluntarily tendered himself as a witness for the State, but the supplemental declaration by the Deputy State's Attorney as to the unproven fact that no agreement was made with the witness ought to have been eliminated. The assertion that he did not intend to barter away the verdict was an unnecessary but unobjectionable announcement of a very proper attitude.

*Judgment reversed and new trial awarded.*