ROY EDWIN CALHOUN *v.* STATE OF MARYLAND

[No. 489. September Term. 1976.]

*Decided January 3, 1977.*

366

The cause was argued before GILBERT, C. J., and MORTON and MASON, JJ.

*Gerald A. Kroop* for appellant.

*Deborah K. Handel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Floyd Pond, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

The "tacking" of a prior owner's adverse possession is permissible to show that the possession has continued for twenty years and that the possession has been open, notorious, hostile and continuous. *Gore v. Hall,* 206 Md. 485, 112 A. 2d 675 (1955); *Zehner v. Fink,* 19 Md. App. 338, 311 A. 2d 477 (1973).

A different type of "tacking" is allowed so as to demonstrate probable cause on the basis of a prior warrant when an investigation is a continuing one. *Everhart v. State,* 274 Md. 459, 337 A. 2d 100 (1975); *Carter v. State,* 274 Md. 411, 337 A. 2d 415 (1975); *Brooks v. State,* 13 Md. App. 151, 282 A. 2d 516 (1971), *cert. denied,* 264 Md. 746 (1972).

The question presented by this case is, may "tacking" be employed by the police, so as to cure a defective present affidavit in support of an application for a court order authorizing an electronic listening device, by incorporating by reference into the present affidavit a prior valid affidavit used in another application.

Acting upon information gathered as the result of an order of the Criminal Court of Baltimore permitting an electronic eavesdrop on telephone number (301) 444-4219, officers of the Baltimore City Police obtained a search and seizure warrant for 300 East 30th Street in Baltimore City. Execution of the search and seizure warrant revealed that a gambling operation was being conducted there. A large amount of bookmaking slips and other related gambling paraphernalia was impounded. Roy Edwin Calhoun was charged with nine violations of Md. Ann. Code art. 27 § 240. Calhoun was tried in the Criminal Court on seven separate "statements of charges," [1] convicted on each, and fined a total of three thousand dollars ($3,000).[2]

Prior to the trial on the merits, Calhoun moved to suppress the fruits of the search on the ground that they were acquired through an illegal wiretap order in that the order did not comply with "the Fourth Amendment of the Constitution of the United States, Sections 2510 through 2520 of Title 18 of the United States Code, Section 10-403 of the Courts and Judicial Proceedings Article, and Article 27, Section 125A of the Annotated Code of Maryland."

Calhoun bottomed his argument upon facts stipulated to the trial judge. In essence those facts were:

On May 27, 1975, an *ex parte* order authorizing the attachment of a decoder [3] to telephone numbers 685-9615 and 727-9656, located at 410 and 412 East Baltimore Street, respectively, was issued by the Criminal Court of Baltimore. The order was based on the petition of William A. Swisher, Esq., the State's Attorney for Baltimore City, and the affidavit of Detective Walter Harmon of the Baltimore City Police Department. The affidavit recited that apparent gambling activity was then occurring at 410 and 412 East Baltimore Street; that there was frequent use of the

---

1. *See* Md. Rule 702 a. and Maryland District Rule 702 a.

2. The State entered a nolle pros as to the remaining two statements of charges.

3. The petition of the State's Attorney defines a decoder as ". . . a device which converts the sounds made by the depression of a touchtone button on a touchtone telephone or the turning of a dial on a rotary telephone into a numerical readout of the telephone number dialed."

telephones by known gamblers in telephoning bets to an unknown location. The affidavit averred that there existed an inability on the part of the police to discover by ordinary investigative techniques ". . . just where it is that these illegal bookmaking wagers are being phoned into." The affidavit further declared that, ". . . these activities will continue uninterrupted unless conventional means of investigation are recognized to be ineffective and extraordinary investigative measures are taken against this wide open and flagrant criminal display."

Subsequently, on June 30, 1975, the court, upon petition, signed an *ex parte* order permitting a wiretap on telephone number 727-9656. The affidavit in support of the petition was made by three Baltimore City Police Department detectives, including Detective Harmon. While the affidavit does not explicitly state that normal police investigation will not succeed, it does implicitly allege that fact. The affiants made clear that search and seizure warrants executed in premises housing telephone numbers called from 727-9656 would produce "unknown results," and "alert the bookmakers." The affiants informed the reader that at least one of the police officers had personally observed the structures housing the telephones frequently dialed from 727-9656 and did not see any activity. We make it perspicuous that the telephone bearing the number 444-4219 and the structure housing it were not mentioned in that affidavit. The wiretap order was self-terminating on July 22, 1975.

Five days before the termination date of the June 30, 1975, order, the State's Attorney petitioned for an *ex parte* order for a wiretap to be placed on telephone number 444-4219. That petition was supported by the affidavit of Detective Harmon. The affidavit read, in pertinent part, that "[a]ttached to this AFFIDAVIT, incorporated by reference herein, with the same force and effect as if reiterated verbatim, are exact duplicates of the following materials[.]" There then appeared a summary of the order, petition, and affidavit for the installation of the decoder and of the wiretap on 727-9656. Nowhere in the affidavit was it stated

that any police officer observed 6995 McClean Boulevard, in Baltimore City, the site where a telephone bearing number 444-4219 was housed, nor was it alleged that normal investigative measures would not suffice. The affidavit narrated that telephone number 444-4219 was dialed from telephone number 727-9656 on July 4, 5, 7, and 8. "A white male answered" the phone, and a total of four bets was placed with that male.

The specific question posed to us is whether the affidavit upon which the application for a wiretap order for telephone number 444-4219 was structured was defective for want of compliance with 18 U.S.C. §§ 2510-2520.[4] notwithstanding that prior valid affidavits and orders had been incorporated therein by reference. Put another way, will an affidavit pass muster by piggy-backing a valid affidavit that was used in support of an application to tap another phone at a different location?

In deciding the issue, we bear in mind the words of Judge Digges in *State v. Siegel*, 266 Md. 256, 274, 292 A. 2d 86, 95 (1972), *aff'g* 13 Md. App. 444, 285 A. 2d 671 (1971), that, "[t]he statute [18 U.S.C. §§ 2510 — 2520] sets up a strict procedure that *must* be followed and we will not abide any deviation, no matter how slight, from the prescribed path." In our discussion, we shall utilize those pregnant words as our guiding light.

----

4. The provisions of 18 U.S.C. § 2510-2520 are controlling in this State. Section 2515 makes that manifest. It provides:

"Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter."

*See also* State v. Siegel, 13 Md. App. at 460, 285 A. 2d at 680. "[A]ll that is required for a state validly to permit interception of wire and oral communications is to have in effect a statute authorizing its principal prosecuting attorney or the principal prosecuting attorney of any of its subdivisions to apply to one of its judges of competent jurisdiction for an order of interception." Maryland has two such statutes, Md. Ann. Code art. 27, §§ 125 A-D and Md. Cts. & Jud. Proc. Code Ann. §§ 10-401 to 10-408 inclusive.

The legislative history of the Omnibus Crime Control and Safe Streets Act of 1968 sets out that what is now codified as 18 U.S.C. §§ 2510-2520 was enacted because:

> "The tremendous scientific and technological developments that have taken place in the last century have made possible today the widespread use and abuse of electronic surveillance techniques. As a result of these developments, privacy of communication is seriously jeopardized by these techniques of surveillance. Commercial and employer-labor espionage is becoming widespread. It is becoming increasingly difficult to conduct business meetings in private. Trade secrets are betrayed. Labor and management plans are revealed. No longer is it possible, in short, for each man to retreat into his home and be left alone. Every spoken word relating to each man's personal, marital, religious, political, or commercial concerns can be intercepted by an unseen auditor and turned against the speaker to the auditor's advantage." [1968] U.S. Code Cong. & Ad. News 2154.

The history makes it unmistakable that law enforcement officers ". . . engaged in the investigation or prevention of specified types of serious crimes," [5] including the transmission of wagering data, may use electronic surveillance only after obtaining a court order based on probable cause. *Id.* at 2153.

18 U.S.C. § 2518 (1) commands that "[e]ach application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation . . . and shall state the applicant's authority to make . . . application." The application *shall* contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or

---

**5.** The specified serious crimes are enumerated in 18 U.S.C. § 2516 (1) a-g.

why they reasonably appear to be unlikely to succeed if tried or to be too dangerous[.]" [6]

By Md. Cts. and Jud. Proc. Code Ann. § 10-403 (a), the General Assembly has mandated that an application for

> "[a]n ex parte order for the interception of telephonic and telegraphic communications may be issued by a judge . . . upon the verified application of the Attorney General or a state's attorney setting forth fully the facts and circumstances upon which the application is based and stating that:
>
> (1) There are reasonable grounds to believe that a crime has been committed or is about to be committed.
>
> (2) There are reasonable grounds to believe that evidence will be obtained essential to the solution of a crime, or which may enable the prevention of a crime.
>
> (3) There are no other means readily available for obtaining the information."

We interpreted, in *Washburn v. State*, 19 Md. App. 187, 196, 310 A. 2d 176, 182 (1973), *cert. denied* April 1976, the legislative will of the Congress and the General Assembly to be that:

> "[E]lectronic surveillance is to be employed, assuming probable cause and compliance with the other provisions of the Federal and State laws, only when one of three things occur: (1) there are no other means available for obtaining the information because normal investigative procedures have been proven unsuccessful; (2) normal investigative procedures appear unlikely to succeed if utilized, and (3) the implementation of normal investigative procedures will be too

---

6. If the court to whom application is made determines that "normal investigative procedures" have not been considered, it should not issue the order. United States v. Giordano, 416 U. S. 505, 515-16, 94 S. Ct. 1820, 1826-27, 40 L.Ed.2d 341, 353 (1974).

dangerous to be operative. In the case before us, the affiants believed that it was unlikely that other investigative procedures would 'succeed in obtaining the identity of all the co-conspirators and in obtaining evidence sufficient to convict.' "

In asserting compliance with the legislative mandate, the State, in the case at bar, points to another affidavit of Detective Harmon, dated July 17, 1975, for an extension of the June 30, 1975, order with respect to telephone number 727-9656, wherein he said:

"It has been the experience of your Affiant, when working under the authorization of court ordered wiretaps in the past, that illegal gambling operations will often move their headquarters for receiving bets for a variety of reasons, all of them good. Your Affiant has worked on a court ordered wiretap where an illegal gambling operation moved its station due to being raided by the Baltimore City Police Department. Your Affiant has worked on a court ordered electronic surveillance of illegal gambling activities where two large bookmaking stations both moved to new locations within two weeks of each other for reasons unknown to your Affiant. In the matter of these latter mentioned bookmaking stations, these moves took place sometime between June 11, 1975 and July 3, 1975 and were in the matter of, in connection with and a part of this present investigation by your Affiant so it is then apparent that the aforementioned gambling station at (301) 444-4219 is subject to a move at any time.

A gambling station may move for the following reasons: (1) They were raided by the Police. (2) They have decided they have been in one place too long and too many people have knowledge of it. (3) They may observe too many police in the area and become suspicious. (4) They may observe unknown people in the area and become suspicious. (5) They

will move to keep fringe members of the organization who may be informants from keeping close track of the integral workings of the operation. (6) They may move when writers (bet takers) are arrested by police for fear that these writers may accidently or intentionally tip off the police as to the location of the station. There are numerous other reasons, some less important and some unknown to your Affiant."

The State then argues, "this practice of incorporation by reference is logical in a continuing investigation and has been recognized as a valid practice under the requirement that supporting documents be read as a whole," citing *United States v. Tortorello*, 480 F. 2d 764, 778-81 (2d Cir.), *cert. denied*, 414 U. S. 866, 94 S. Ct. 63, 38 L.Ed.2d 86 (1973). *Tortorello*, however, does not address itself to the issue now before us. While it sanctions the use of prior validly intercepted conversations as part of the total probable cause, it neither approves nor condemns the practice that was followed in the instant case. We agree that supporting documents, along with the affidavit and application, should be read and considered as a whole by a judge when he is requested to issue a wiretap or similar order. Reading "as a whole," however, will not cure a defective supportive affidavit. That the initial affidavit is legally sound does not mean that all subsequent affidavits, even in a continuing investigation, are also sufficient. Each affidavit must stand on its own foundation. If a foundation is constructed in a faulty manner, it makes no difference that the builder had previously erected foundations which were free of fault.

Moreover, we observe that the quoted portions of the affidavit to which the State directs our attention were not included within the recitation of background matter to which the State alluded in its petition for an order to tap telephone number 444-4219 but were contained in a separate unincorporated affidavit.

The State suggests that the "practical and common sense approach" of *In re Dunn*, 507 F. 2d 195 (1st Cir. 1974) and its

siblings, *United States v. Armocida,* 515 F. 2d 29 (3d Cir. 1975); *United States v. Steinberg,* 525 F. 2d 1126 (2d Cir. 1975) be employed in evaluating the sufficiency of the affidavit that supports the application for the electronic eavesdrop order. The seeds of the "practical and common sense approach" were sown in the legislative history of Title III of the Omnibus Crime Control and Safe Streets Act of 1968. There it said:

> "Subparagraph (c) requires a full and complete statement as to whether or not normal investigative procedures have been tried and failed or why these are unlikely to succeed if tried, or to be too dangerous. . . . The judgment would involve a consideration of all the facts and circumstances. Normal investigative procedure would include, for example, standard visual or aural surveillance techniques by law enforcement officers, general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspirational groups by undercover agents or informants. Merely because a normal investigative technique is theoretically possible, it does not follow that it is likely. What the provision envisions is that the *showing be tested in a practical and common sense fashion.*" [1968] U.S. Code Cong. & Admin. News at 2190 (emphasis added) (citations omitted).

*Dunn, supra,* may be described as sketchy at best. It relates the contents of an affidavit which indicated that the "target" of the investigation was suspicious of strangers, that physical surveillance would be difficult because of its possible detection and was also potentially dangerous to the undercover agent, that the nature of loan sharking deterred conventional methods of investigation, and then finds that there was sufficient compliance with 2518 (1) (c) when viewed in a "practical and common sense fashion." *Dunn* is readily distinguishable from the case before us because such statements were not made in the case at bar.

*Armocida, supra,* is inapposite. There, the court found within the affidavit a "factual predicate" which included: (1) a history of physical surveillance; (2) utilization of informants; (3) undercover agents; and, (4) other wiretap interceptions. All of these techniques apparently were tried and failed. Further, the affidavit indicated (1) that the informant would not testify; (2) surveillance was too easily noticeable and could jeopardize the investigation; and (3) a search warrant was unlikely to reveal the identities of those in the conspiracy or the source of heroin. 515 F. 2d at 38.

*Steinberg, supra,* also provides no support for the State. In that case the affidavit contained the following: "I allege the facts contained in the numbered paragraphs to show that: . . . (c) Normal investigative procedures reasonably appear unlikely to succeed, or are too dangerous to be used. . . ." 525 F. 2d at 1130 n. 3. The application also described the progress of the agent's investigation, previous deliveries of drugs, representations of the suspect, the lack of undercover access to the suspect, the impossibility of developing such access, and the agent's experience and general knowledge.

The *Steinberg* court held that the affidavit was in substantial compliance with 18 U.S.C. § 2518 (1) (c) and (3) (c).[7]

We note that the affidavit in *Steinberg* did allude to the unlikely success of normal investigative procedures and the personal peril of that type of investigation, while in the case *sub judice,* the affidavit upon which the tap on telephone number 444-4219 was ordered makes no reference at all to normal investigative procedures.

While we subscribe to the common sense, pragmatic approach of *Dunn, Armocida,* and *Steinberg,* we fail to see

---

7. For other cases that adhere to the view that "substantial compliance" satisfies the § 2518 (1) (c) and (3) (c) requirements because of the "practical and common sense" philosophy of the Act, *see*: United States v. Anderson, 20 Crim. L. Rep. (BNA) 2103 (7th Cir. 9/30/76); United States v. Matya, 20 Crim. L. Rep. (BNA) 2074 (8th Cir. 9/9/76); United States v. Robertson, 504 F. 2d 289 (5th Cir. 1974); United States v. James, 494 F. 2d 1007 (D.C. Cir. 1974); United States v. Bobo, 477 F. 2d 974 (4th Cir. 1973); United States v. Fina, 405 F. Supp. 267 (E.D. Pa. 1975); State v. Rowman, 352 A. 2d 737 (N.H. 1976). *Contra:* United States v. Kalustian, 529 F. 2d 585 (9th Cir. 1975).

how that approach will salvage the application in the present matter. In each of those cases, but not here, the affidavit in support of the application made reference as to why normal investigative procedures would not succeed. What the State, in the instant case, did was to make an application, supported by a valid affidavit, and obtain an order thereon for a location on East Baltimore Street. Thereafter, it sought a new order for a location on McClean Boulevard, and in the affidavit in support thereof, attempted to fuse the allegation of the first affidavit, that normal investigative procedures would not be successful, by incorporating the prior affidavit by reference. If such a procedure were allowed, it is possible that the police could obtain a valid order based on a legally sufficient affidavit and then in a whole series of new application incorporate the prior affidavit by reference so as to comply superficially with 18 U.S.C. § 2518.

We believe the words of the Supreme Court in *United States v. Giordano, supra,* to be particularly appropriate. The Court said: "Congress legislated in considerable detail in providing for applications and orders authorizing wiretapping and evinced the clear intent to make doubly sure that the statutory authority be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications. These procedures were not to be routinely employed as the initial step in criminal investigation. Rather, *the applicant must state and the court must find that normal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous.*" 416 U. S. at 515, 94 S. Ct. at 1826-27, 40 L.Ed.2d at 353 (emphasis supplied).

Courts are not free to infer from the mere presentation of an application or petition, supported by an affidavit, that normal investigative procedure will not work. There must be specific compliance with 18 U.S.C. § 2518. The affidavit *must* demonstrate to the issuing judge that normal investigative measures have been tried and failed, *or* they are unlikely to be successful under the circumstances, *or*

that their use is too perilous to the investigators. That a prior affidavit for another time and another place so demonstrates, even when incorporated by reference, is not compliance with the strict requirements of the Act.

We end where we started, with the cogent words of the Court of Appeals in *Siegel, supra,* that, *"The statute sets up a strict procedure that must be followed and we will not abide any deviation, no matter how slight, from its prescribed path."* 266 Md. at 274, 292 A. 2d at 95. (Emphasis supplied.)

The order in this case did permit a deviation from the "prescribed path" of the statute. Hence, it was defective, and the evidence seized as a result of the order should have been suppressed.

We quote with slight editing the foreword of the book, *The Right of the People to be Secure, An Examination of the Fourth Amendment* by Judge Moylan of this Court, published by the National College of District Attorneys (1976) that:

> "Frequently a police officer, in a reflective mood, will say, 'Judge, you know this . . . [wiretap law] makes my job a lot tougher and more difficult.' What does one respond, except to say:
>
> 'Officer, that's precisely what . . . [it] is for. Even in our service, you are not permitted the efficiency permitted a counterpart in a Gestapo or an NKVD. From day to day, that is your burden; but from decade to decade and century to century, that is your glory. When you look at your wife and children at home at night, you yourself would not have it otherwise. Yes, Officer, it makes your job a lot more difficult. It's supposed to.' "

*Judgments reversed.*
*Costs to be paid by Mayor and*
*City Council of Baltimore.*