## MARIE LANIER BELL *v.* STATE OF MARYLAND

[No. 1164, September Term, 1980.]

*Decided May 12, 1981.*

The cause was argued before MORTON, LOWE and COUCH, JJ.

*Gary W. Christopher, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Ann E. Singleton, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Richard D. Warren, State's Attorney for Wicomico County,* and *Stephanie J. Lane, Assistant State's Attorney for Wicomico County,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

Marie Lanier Bell has appealed her convictions of conspiracy to batter and conspiracy to murder from the Circuit Court for Wicomico County, presided over by the Honorable Lloyd Simpkins. She previously appealed a denial of dismissal on double jeopardy grounds arising from a mistrial. *Bell v. State,* 41 Md. App. 89 (1979); *aff'd,* 286 Md. 193 (1979). She was not successful on that occasion; she will not succeed on this one either.

I.

Her first argument in this appeal is that the trial court erred in admitting evidence of unlawful wiretaps because the affidavit on the application violated Md. Cts. & Jud. Proc. Code Ann. § 10-408 (a) (3) by failing to include

"A full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ."

Section 10-408 (c) of the Courts Article is the express authority for issuing the order. It authorizes its issuance only *"if the [issuing] judge determines* on the basis of the facts submitted by the applicant" that four requisites of inclusion have been met, one of which is that "[n]ormal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." § 10-408 (c) (3). The applicant submitted in this case, along with the applications, an affidavit by one of the investigating officers.

Appellant claims that the affidavit "consisted of nothing more than an exhaustive recitation of the substantial investigative measures undertaken in the three days from the commission of the crime until the application." The hearing judge in denying the motion to suppress, indicated that it was unnecessary to state or allege specifically that other investigative procedures appeared unlikely to achieve a necessary investigative goal.

> "Both Federal and State Courts have held in determining the sufficiency of an application for wiretap order, the test is a practical and common sense manner. The State, in a criminal case, is not required to exhaust all investigative procedures before resorting to wiretap. I think that we all would agree with that. In the *McCoy* case, *United States vs. McCoy,* it says that common sense dictates that the purpose of the statute is not to foreclose electronic surveillance until every other manner has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in use of conventional techniques, and that all that needs be found in the affidavit is factual predicate to support a finding that other techniques appear unlikely to succeed."

It was sufficient, he believed, if an issuing judge could read into the affidavit, together with the application, that other investigative procedures had been tried and failed, or that "other techniques appear unlikely to succeed."

Chief Judge Gilbert pointed out in *Calhoun v. State,* 34 Md. App. 365, 374 (1977),[1] that the legislative history of the federal wiretap statute (along which lines our own was tailored, *see Baldwin v. State,* 45 Md. App. 378, 380 (1980), *aff'd,* 289 Md. 635 (1981)), noted in regard to the parallel provision to § 10-408 (a) (3) that

> " 'Merely because a normal investigative technique is theoretically possible, it does not follow that it is likely. What the provision envisions is that the *showing be tested in a practical and common sense fashion.* [citation omitted]' " (Emphasis added by Judge Gilbert).

The government need not prove to a certainty that such techniques will not succeed if — as stated in the statute —

---

1. Despite appellant's suggestion, *State v. Bailey,* 289 Md. 143 (1980), did not upset our right to continue to subscribe to *Calhoun's* adoption of the "common sense, pragmatic approach."

it "reasonably appear[s] to be unlikely to succeed." *See, United States v. Webster,* 473 F. Supp. 586, 595 (D. Md. 1979). The application, which is to be read along with the affidavit (*Calhoun, supra* at 373), synopsized the investigative measures undertaken which the affidavit exhaustively recited (as conceded by appellant), and concluded that these were exhaustive of any relevant investigative procedures pertinent to that which was being investigated.

"4. OTHER INVESTIGATIVE PROCEDURES employed to date have included all avenues of regular investigations of homicide, including interviews of all persons known to be related to or to have been acquainted with the victim, neighborhood canvasses, fingerprint dusting, ballistic studies, post-mortem examination. To date such procedure has yielded nothing more substantial than has been related above. Crime Laboratory scene identification and surveillance of the Suspects have likewise provided no useful information. No further investigative measures are available at the Present."

The issuing judge could certainly "determine on the basis of the facts submitted by the applicant" that:

"Normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed. . . ." § 10-408 (c) (3).

It is difficult for us to see what more the state could say or do in reciting or trying appropriate techniques. While a "normal investigative technique" included in the aforementioned legislative history, *Calhoun, supra* at 374, the "infiltration of conspiratorial groups by undercover agents or informants," was not mentioned in the application, such procedure may have been "theoretically possible" with only two conspirators, but "it does not follow that it is likely." It hardly needs but a small sampling of "common sense" or pragmatism to recognize that two persons are unlikely to be "infiltrated."

It was, furthermore, implicit in the affidavit and explicit in the application that

> "The nature of the relationship between Marie L. Bell and Ralph D. Mason, Jr. is such, and the nature and subject of the conspiracy is such that several conversations, each containing only partial disclosures, is reasonably anticipated. Further, as police investigative efforts present constantly changing stimuli, more frequent contact between the parties may occur."

It was also implicit in the application that the conspirators having carried out their purpose were avoiding a sense of public togetherness, obviously to avoid suspicion. The affidavit concluded with a paragraph pointing out that there was

> "additional information which the police have learned and which neither [of the conspirators] know, and which, when disclosed to Marie Bell will cause her to make efforts to immediately contact Ralph Mason, Jr. Further, based upon Affiant's own observations as set forth above, your Affiant believes that the relationship between Ralph Mason, Jr. and Marie Bell is a continuing relationship which will involve further telephone contact."

The issuing judge could easily "determine on the basis of the facts submitted" that the conspirators were likely to conspire by telephone exclusively in covering up that which had been brought to fruition by the murder of Mr. Bell, and that unless one is privy to such conversations the investigation will be thwarted. If such information so exhaustively detailed and synopsized is not sufficient for a judge to determine that normal investigative procedures have been tried and have failed or would be "unlikely to succeed if tried," our interpretation of the rigid compliance requirement of *Giordano* and of *State v. Siegel,* 266 Md. 256 (1972), would be absurd rather than "strict." It was clear to the issuing judge

and to the judge hearing the suppression motion, and it is clear to us, that the wiretap

> "procedures were not . . . routinely employed as the initial step in criminal investigation." *United States v. Giordano,* 416 U.S. 505 (1974),

which is the danger the provision in question was intended to guard against. As pointed out by the trial judge, the statute was not intended to foreclose electronic surveillance, but rather, as *Giordano* suggests, it is to assure an issuing judge by showing the unlikelihood of success, or the prior failure of routine procedures, that wiretapping is not being asked for as an initial convenience. *See also, Calhoun, supra* at 377. In this case we are wont to wonder what else the state might have done to comply.

## II.

Appellant's contention that she was not present at a "stage of the trial" (because she was absent when a hearing resumed on a motion to suppress) smacks of the specious. Appellant was free on bond, according to the docket entries, and was present at the initial hearing when counsel commenced the discussion of the motion to suppress wiretap evidence. After some argument her attorney indicated that he would submit an additional memorandum of law on the issue. The prosecutor argued briefly but reserved further comment until he received the additional defense memorandum.

Although the docket entry indicates her absence at the subsequent resumption, at no time thereafter when appearing before the court did appellant object or complain; not at the trial, nor upon motion for new trial did she raise the issue, nor does she now allege any prejudice. But even if appellant had not waived the issue for purposes of appeal, it would have availed her naught. The cases upon which she relies are distinguishable. In none of these cases was the hearing commenced and argued, then continued to permit the defendant to submit memoranda. Her failure to appear

at the resumed hearing is analogous to a failure to reappear at a trial already in progress. The rule relied upon, Md. Rule 724, provides that a defendant initially at trial waives his right to be present when he voluntarily absents himself after the trial has commenced. That same reasoning is applicable when a defendant voluntarily absents himself (or in this case herself) after having initially been present when the hearing began.

## III.

The third contention is that the trial court improperly excluded evidence designed to impeach the prosecuting witness who had been the "trigger man," killing appellant's husband at her insistence. Prefatorily we should note that appellant acknowledges that the credibility of the witness (Ralph Mason, Jr.) was "extensively impeached." Her first complaint, however, is that she was curtailed in her efforts to further impeach him through the testimony of a "psychiatric social worker" who was asked whether he had formed

> "an opinion as the *capacity* of Mr. Ralph Mason to tell the truth concerning this verdict. [Emphasis added.]"

Because the question did not ask for an opinion regarding Mason's *character* for truthfulness, appellant does not urge its admissibility under Md. Cts. & Jud. Proc. Code Ann. § 9-115, but citing *State v. Conn,* 286 Md. 406 (1979), rather contends that where

> "sanity is in issue, ... a non-expert witness may give his opinion in evidence, in connection with his personal observations of the facts upon which it is founded, and as derived from them." *Id.* at 410, *quoting from, Watts v. State,* 99 Md. 30, 36-37 (1904).

In this case, however, the basic predicate for admissibility is missing. Mason's sanity was not an issue. The issue was

Mason's character and appellant expressly concedes that the question was not predicated upon that premise.

Appellant is also chagrined that she was not allowed to call a police sergeant to testify that his investigation of an incident at jail involving an alleged attempt on Mason's life (inferably from appellant or at her counsel's instigation) disclosed that Mason had lied and had concocted the incident.

The sergeant's proffered opinion on Mason's character for truthfulness was based on an investigation (an interview and a review of medical records). The trial judge had the responsibility of determining whether this was an adequate basis for such an opinion and decided it was not. We do not find that the judge abused his discretion. *Durkin v. State,* 284 Md. 445, 453-54 (1979). Contrary to appellant's assertion here, there was no proffer at trial that the officer would testify that

> "Mason had admitted to him that he had lied about the purported attack and appellant's attorneys' involvement in it. . . ."

## IV.

While acknowledging the discretionary right of a trial judge to question witnesses, appellant points out that in this case the judge asked at least fifty-four questions which clearly "manifested an opinion adverse to the appellant or to the defense upon which [s]he sought to rely." *Bailey v. State,* 6 Md. App. 496, 510, *cert. denied,* 255 Md. 739 (1969).

Appellant did not object, however, which is a prerequisite to bringing the matter before us. *King v. State,* 14 Md. App. 385, 393-94, *cert. denied,* 265 Md. 740 (1972); *Bailey, supra* at 510. If the contention is that the judge has not been "scrupulously careful to preserve an attitude of impartiality," *Patterson v. State,* 275 Md. 563, 578-80 (1975), the proper procedure to preserve a complaint is set forth in *Brown v. State,* 220 Md. 29, 39 (1959).

The judge's questioning here was hardly extensive in light of the length of the case and its subsidiary issues. Certainly

the questioning was not extraordinarily so. The trial judge's role is that of an impartial arbitrator and that appearance is not generally compatible with an inquisitorial role. It is the better practice for a trial judge to inject himself as little as possible in a jury case, *United States v. Green,* 429 F.2d 754, 760 (D.C. Cir. 1970), because of the inordinate influence that may emanate from his position if jurors interpret his questions as indicative of his opinion. *See, also, Patterson, supra.* The appearance that a judge may have abandoned his role as an impartial arbitrator, is especially hazardous when cross-questioning a defendant.

Yet, if counsel have faltered in their advocacies, it is not improper for a trial judge to be "meticulously careful to make sure that the full facts [are] brought out," *Jefferies v. State,* 5 Md. App. 630, 632 (1959), or to seek to discover the truth when counsel have not elicited some material fact, or indeed when a witness has not testified with entire frankness. Annot., 84 A.L.R. 1172, 1193 (1933). Such questioning may even bear upon the credibility of a defendant in a proper circumstance. *Madison v. State,* 200 Md. 1, 12 (1952); *King v. State, supra* at 394. This should be achieved expeditiously, however, if at all, for a protracted examination has a tendency to convey to a jury a judge's opinion as to facts or the credibility of witnesses. *Annot., supra.*

We are blessed in Maryland by the fact that no judge's conduct has ever compelled reversal because he has by the form, manner, or extent of his questioning indicated to the jury his opinion as to the defendant's guilt.[2] While that is a commendable commentary on our judiciary, it leaves us somewhat adrift as to what will constitute an overstep of the line of propriety. A review of the entire record here, however, does not give us any reason to believe that the court *exceeded* the limits of its proper judicial discretion, *Rickards v. State,* 129 Md. 184, 190 (1916), or even went dangerously near that boundary. Although the musical observation in

---

**2.** *But see,* Brown v. State, *supra* at 39, reversing on other grounds, but noting that the Court of Appeals felt "constrained to say that the questions asked were clearly improper."

*Oklahoma,* that "he's gone about as far as he could go," seems inappropriate to the facts here, we would be more assured if we had precedent before us as to just how far is too far.

In light of all of the testimony in the case, we do not find that the judge's attitude reflected prejudicial unfairness, partiality, or an opinion of guilt. *See, e.g., Hall v. State,* 22 Md. App. 240, 246-47 (1974). At worst the interrogation appeared to question some of the defenses upon which appellant sought to rely; it did not, however, manifest an opinion adverse to appellant or adverse to those defenses. This would appear to be where the line is drawn. *See Rickards, supra.* We admonish any trial judge, however, to avoid brinkmanship and to sin, if at all, on the side of silence.

## V.

Appellant contends also that the court erred in summarizing the evidence so as to highlight the State's case. Although appellant contended on the foregoing issue that it would have been awkward or embarrassing to have objected to the court's question, we note that her faintheartedness did not last. Presumably accepting the admonition of Edward Burke that there comes a time in every circumstance when forebearance ceases to be a virtue, appellant did object to the evidentiary summarization by the judge.

Our review does not indicate to us that the summarization was prejudicial or inordinately one-sided. Indeed we noted that on nearly a half dozen occasions the judge reminded the jury that it was its function to decide what the true facts were, who to believe or disbelieve, whose recollection of the evidence was correct and what the evidence indicated. The judge was not required to comment upon all the evidence in this extensive case, but was only to provide a fair and impartial summarization. *Coby v. State,* 225 Md. 293, 296-97 (1961). We find that is precisely what he did here.

## VI.

Appellant was sentenced to life imprisonment for the conspiracy to murder her husband because, as the judge stated,

> "the crime you conspired to commit was first degree murder."

Because the issue of premeditation was not submitted to the jury, appellant contends that such an inference is not available to the sentencing judge, despite the evidence that the murder was done by "lying in wait." Md. Ann. Code art. 27, § 407. She contends that the *instructions* about that issue became the law of the case despite the evidence before the court. *Cf. Quaglione v. State,* 15 Md. App. 571, 578-80 (1972). If one conspires to murder, however, the conspiracy itself is the premeditating factor raising the underlying crime from a second to a first degree offense. *See, Wise v. State,* 47 Md. App. 656 (1981), *Williamson v. State,* 282 Md. 100, 101 (1978).

## VII.

Finally, appellant contends that the court erred in refusing to merge appellant's separate convictions of conspiracy to batter and conspiracy to murder. There was evidence, however, clearly indicating that there were two separate and distinct conspiracies; the first to have Mason beat her husband (which was subsequently abandoned) and the second (subsequently accomplished) to kill her husband. There was no error.

*Judgment affirmed.*
*Costs to be paid by appellant.*